**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BRANDON LEE ROANE, on behalf of
himself and all others similarly situated,

                    Plaintiff,

        v.

GRMC, INC., doing business as Garrett
Regional Medical Center,

                    Defendant.

Case No. _____

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, defendant GRMC, Inc. ("Defendant") removes this action from the Circuit Court for Garrett County, Maryland to the United States District Court for the District of Maryland.

Attached to this Notice are true and correct copies of the complaint (Ex. A); the docket and copies of all process, pleadings, orders, and other papers served on Defendant in the Circuit Court (Ex. B); a civil cover sheet (Ex. C); and a notice of the filing of this Notice of Removal, which Defendant will file with the Clerk of the Garrett County Circuit Court (Ex. D).

The grounds for removal are as follows:

## I.    BACKGROUND

1.     In late May 2023, Progress Software Company ("PSC") discovered that an unauthorized threat actor exploited a previously unknown vulnerability in its file transfer software, MOVEit (the "MOVEit incident"). As a result, the threat actor was able to access data from government, public, and private organizations worldwide. Within days of the

MOVEit incident being announced, class action lawsuits began to be filed all over the country. Those suits named—in various combinations—not just PSC, who owned and sold the software, but any identifiable downstream entity, including Defendant. Consequently, to date, suits have been brought against over 60 defendants. There are well over 200 cases in federal court.

2.      Defendant GRMC, Inc. is a healthcare organization and member of the West Virginia United Health System ("WVUHS"). Nuance Communications, Inc. ("Nuance") is a provider of speech recognition and AI-solutions software to hospitals and healthcare plans, including WVUHS. Nuance used the MOVEit application to exchange files with its customers, including WVUHS members.

3.      Nuance provided notice of the MOVEit Incident to WVUHS and patients of WVUHS members whose information was potentially impacted by the MOVEit Incident.[1]

4.      On July 6, 2023, an application was filed with the United States Judicial Panel on Multidistrict Litigation ("JPML") to consolidate numerous federal court actions against Progress Software arising out of the same MOVEit incident at issue in the Complaint. *See In re: MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, ECF No. 1 (J.P.M.L. 2023).

5.      On October 4, 2023, the Judicial Panel on Multidistrict Litigation (JPML) centralized all actions related to the MOVEit Incident in the United States District Court for the District of Massachusetts. *In re: MOVEit Customer Data Security Breach Litigation.*, MDL No. 3083 (ECF No. 312). The purpose of the consolidation was to "serve the convenience of

---

[1] Although Plaintiff alleges his personal and medical information was provided to Defendant GRMC, Inc. and impacted in the MOVEit Incident, Plaintiff failed to include a copy of the actual breach notice (provided by Nuance) with his complaint.

the parties and witnesses and promote the just and efficient conduct of this litigation." (*Id.* at 2.) The JPML assigned all related actions to Judge Allison D. Burroughs, who is charged with overseeing and adjudicating all pre-trial proceedings. Judge Burroughs has since held an initial case management conference and is in the process of evaluating applications for leadership counsel and setting a case management schedule.

6.      Despite the ongoing MDL designed to efficiently coordinate the hundreds of actions related to the MOVEit Incident, Plaintiff filed this class action in state court on November 20, 2023, bringing claims for monetary damages and injunctive relief as a result of the MOVEit Incident virtually indistinguishable from those already pending in the MDL. Plaintiff seeks to represent a "nationwide class" consisting of "[a]ll persons whose Private Information was maintained by GRMC and accessed or acquired during the Data Breach as a result of the exploitation of the MOVEit Application vulnerability." (Compl. ¶ 55.)

7.      Plaintiff's and the putative class members' claims are already within numerous putative classes seeking similar relief before Judge Burroughs in the MDL proceeding in the District of Massachusetts. For example,

- *Farrar v. Nuance Communications, Inc.*, ECF 1, Case No. 1:23-cv-12561-ADB (D. Mass.) (Pennsylvania citizen and patient of a WVUHS hospital seeking to represent "[a]ll persons residing in the United States whose PII was impacted by the [MOVEit] Data Breach—including all persons that received a Notice of the Data Breach"). *Farrar* was made part of MDL 3083 on October 30, 2023. (ECF 5.)

- *Moore v. Nuance Communications, Inc.*, ECF 1, Case No. 1:23-cv-12446-ADB (D. Mass.) (West Virginia citizen seeking to represent "[a]ll individuals in the United States and its territories whose PII and/or PHI was compromised in the Nuance [MOVEit] Data Breach"). *Moore* was made part of MDL 3083 on October 20, 2023. (ECF 4.)

Here, Plaintiff and the putative class members which Plaintiff defines as "all persons" whose information was "acquired during the Data Breach" would fall into both the Farrar

class of "all persons" that were "impacted by the Data Breach" and the Moore class of "all individuals" whose information was "compromised in the Nuance Data Breach."

8.      Apart from putative class claims directly involving the entity with which WVUHS contracted (Nuance), there are also multiple pending cases that name Progress Software and cover nationwide classes of individuals whose information was compromised because of the alleged vulnerability in the MOVEit application. For example,

- *Ortega et al. v. Progress Software Corporation, et al.*, (C.D. Cal. Case No. 5:23-01329) (California plaintiffs sued PSC and an impacted entity that used PSC's MOVEit software (like Defendant here) and allege a putative nationwide class of "[a]ll individuals in the United States whose Private Information was stored/accessible by Pension Benefit Information, LLC and compromised as a result of exploitation of Progress Software Corporation's MOVEit Transfer and MOVEit Cloud vulnerabilities").

- *Pipes v. Ipswitch, Inc. et al.*, (D. Mass. Case No. 1:23-11394) (Louisiana plaintiff sued both PSC and an impacted entity that used PSC's MOVEit software (like Defendant here) and alleges a putative nationwide class of "[a]ll natural persons who are residents of the United States whose Personal Information was compromised in the MOVEit Data Breach, including all natural persons who were sent a notice indicating that their Personal Information may have been compromised in the MOVEit Data Breach").

- *Bailey v. Progress Software Corporation, et al.*, (D. Minn. Case No. 0:23-02028) (California plaintiff sued both PSC and an impacted entity that used PSC's MOVEit software (like Defendant here) and allege both a putative nationwide class and California subclass of "[a]ll natural persons . . . whose SPI [sensitive personal information] was compromised in the Data Breach announced by Defendants on or about June 6, 2023").

9.      Plaintiff's class claims are subject to removal under the Class Action Fairness Act and will be more appropriately resolved by inclusion in the MDL.

## II.   GROUNDS FOR REMOVAL UNDER CAFA

10.      "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants,

to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

11.     The Class Action Fairness Act (CAFA) grants original jurisdiction over class claims that meet the statutory requirements—"(1) the parties are minimally diverse, i.e., any member of a class of plaintiffs is a citizen of a state different from that of any defendant; (2) the amount in controversy exceeds $5,000,000, and (3) the proposed class has at least 100 members." *Schupp v. U.S. Auto. Assoc.*, 2023 WL 1784681, at \*2 (D. Md. Feb. 6, 2023). "Because no antiremoval presumption attends cases invoking CAFA, a defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (citing *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014)).

12.     "[T]he liberal rules of pleading apply to removal allegations." *Scott*, 865 F.3d at 195. Thus, Defendant need only provide a "short and plain statement" containing enough facts for the Court to "draw the reasonable inference" that removal requirements are met. *Id.*

13.     Moreover, the "[CAFA] provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89.

14.     This Court has subject matter jurisdiction under the CAFA because: (1) there is minimal diversity of citizenship between the members of the putative class and Defendant; (2) there are at least 100 putative class members; (3) the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs; and (4) all other requirements for removal have been satisfied.

**A.      This Case Involves a Class Action.**

15.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

16.     Plaintiff seeks to represent a putative class pursuant to Md. Rule 2-231, the state of Maryland's analog to Federal Rule of Civil Procedure 23. (Compl. ¶¶ 54–55.) Thus, the first CAFA requirement is satisfied.

**B.      Minimal Diversity Exists.**

17.     Under CAFA, diversity of citizenship exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In other words, "at least one defendant" is diverse in citizenship "from at least one plaintiff." *Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 158 (4th Cir. 2010).

18.     Defendant GRMC, Inc. is incorporated in Maryland and maintains its principal place of business in Maryland. Thus, Defendant is a Maryland citizen for diversity purposes. *See Johnson v. Adv. Am.*, 549 F.3d 932, 935 (4th Cir. 2008) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").

19.     Although Plaintiff alleges he is a resident of Maryland, minimal diversity exists because Plaintiff plausibly alleges enough facts to draw the reasonable inference that there is at least one class member that is a citizen of a state besides Maryland.

20.     Plaintiff alleges Defendant "provides services throughout West Virginia and portions of the surrounding states of Maryland, Ohio, and Pennsylvania." (Compl. ¶ 8.)

Plaintiff further alleges that he seeks to bring a "nationwide class" and defines the class as "[a]ll persons whose Private Information was maintained by GRMC and accessed or acquired during the Data Breach as a result of the exploitation of the MOVEit Application vulnerability." (Compl. ¶ 55.)

21.     In other words, Plaintiff has plausibly alleged that at least one member of the putative "nationwide class" is a citizen of West Virginia, Ohio or Pennsylvania where Defendant also provided services. *See, e.g.*, *Scott v. Cricket Commcn's, LLC*, 2018 WL 1583552, at *5 (D. Md. Mar. 30, 2018) ("nationwide class" allegation "support[ed] Cricket's theory of diversity jurisdiction under CAFA"); *Rosas v. Carnegie Mortg., LLC*, 2012 WL 1865480, at *5 (C.D. Cal. May 21, 2012) ("Because the complaint alleges a 'nationwide class,' minimal diversity necessarily exists.").

22.     That there is already an MDL proceeding raising similar claims regarding the same data security incident which includes Plaintiff and the putative class members in this case further supports that there is diversity jurisdiction under CAFA.

23.     Indeed, courts have found that "both CAFA and MDL considerations warrant looking beyond the pleadings" where, as here, a plaintiff is "attempting to represent class members already before [an MDL] court." *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415 (D. Md. Sept. 20, 2019).

24.     In *Simon*, plaintiffs brought class claims arising out of a data breach incident in Connecticut state court despite an ongoing MDL proceeding addressing dozens of cases brought by plaintiffs nationwide regarding the same incident. To avoid diversity jurisdiction, the *Simon* plaintiffs pled that they intended to represent only a class of stateless individuals domiciled abroad. *Id.* at *2. But the Court found that there was "no legitimate basis for the

need to litigate their claims separately from the MDL because of their geographic location"
and to do so would mean plaintiffs "could recover from both their state court action and from
the MDL, from either (or both)" of the individual actions in the MDL that subsumed their
putative class. *Id.* at *4.

25.     The *Simon* court further explained that "[t]he policy justifications for finding
federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint,
such as preventing inefficiency and 'ensuring federal court consideration of interstate cases of
national importance,' hold even more true in the MDL context." *Id.* Indeed, "[a]llowing the
Simons to manipulate CAFA would be harmful here because it could disrupt the orderly
progress of the pretrial process in the Marriott MDL." *Id.*

26.     A similar result was reached in *Sanders v. Kia America, Inc.*, 2023 WL 3974966
(C.D. Cal. June 13, 2023). There, California residents filed a "mass tort" action in California
state court against a California car company regarding issues with anti-theft technology. The
*Sanders* plaintiffs' claims were the same as those raised in a pending MDL proceeding created
to centralize all litigation for suits by consumers who purchased or leased vehicles that lacked
the anti-theft technology. Plaintiffs alleged there was not minimal diversity for removal
purposes because both Plaintiffs and the car companies were California residents.

27.     Citing *Simon*, the court disagreed, and "reach[ed] beyond the pleadings" to
determine that minimal diversity existed because the *Sanders* plaintiffs were subsumed by a
class in the MDL that contained non-California citizens. *Id.* at *5.

28.     The *Sanders* court explained that, "[while] Plaintiffs are entitled to choose a
state forum for their action by limiting the number of plaintiffs or the amount of recovery they
seek[,] where there is actually no difference between this action and the existing claims that

are being pursued in a multidistrict litigation . . . this is exactly the type of case that CAFA envisioned as removable." *Id.* at *6.

29.    Like *Simon* and *Sanders*, so, too, here. The MOVEit Incident has impacted individuals nationwide and has resulted in hundreds of suits raising the same types of claims, seeking the same types of relief, and seeking to represent classes that necessarily include Plaintiff and the putative class.

30.    Looking beyond the pleadings to the MDL created to efficiently resolve claims regarding the national MOVEit Incident, there is at least one class member diverse from Defendant here. *See, e.g.*, *Farrar v. Nuance Communications, Inc.*, Case No. 1:23-cv-12561-ADB (D. Mass.), ECF 1 ¶ 118 (Pennsylvania citizen seeking to represent "all persons" impacted by and that received notice of the MOVEit Incident); *Moore v. Nuance Communications, Inc.*, Case No. 1:23-cv-12446-ADB (D. Mass.), ECF 1 at ¶ 109   (West Virginia citizen seeking to represent "all individuals in the United States and its territories" impacted by the MOVEit Incident announced by Nuance). In fact, the MDL cases demonstrate that there are more than one million individuals in the class of individuals impacted by the MOVEit Incident and that these individuals are likely citizens from multiple states nationwide. *See, e.g.*, *Moore*, ECF 1 at ¶ 112 (alleging the class includes approximately 1.2 million individuals and defined as "[a]ll individuals in the United States and its territories"); *Farrar*, ECF 1 at ¶ 123  (same).

31.    Plaintiff's complaint contains enough facts to draw the reasonable inference that at least one member of its putative class is a citizen of a state besides Maryland. And Plaintiff should not be permitted to evade inclusion in the MDL by pleading around federal jurisdiction— this will only "disrupt the orderly progress" of the MOVEit MDL.

32.    Moreover, although plaintiff singles out GRMC—one member of WVUHS—

the notice from Nuance makes clear that its relationship was with WVUHS whose members were affected in multiple states.

### C.    There Are More Than 100 Putative Class Members.

33.    Plaintiff seeks to represent a "nationwide class" comprised of "[a]ll persons whose Private Information was maintained by GRMC and accessed or acquired during the Data Breach as a result of the exploitation of the MOVEit Application vulnerability." (Compl. ¶ 55.)

34.    Plaintiff further alleges that "more than one thousand (1000) patients had their information accessed in the data breach." (Compl. ¶ 19.) Thus, CAFA's 100-person requirement is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

35.    This requirement is also satisfied for the same reason minimal diversity exists here. Because the proposed putative class is subsumed within the putative classes already in the MOVEit MDL proceeding, the Court may look to the number of proposed class members in the MDL classes to satisfy the numerosity requirement. *See, e.g.*, *Moore*, ECF 1 at ¶ 112 (alleging the class includes approximately 1.2 million individuals); *Farrar*, ECF 1 at ¶ 123 (same).

### D.    The Amount-in-Controversy Requirement is Satisfied.

36.    Pursuant to CAFA, the complaint must put in controversy more than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

37.    To satisfy the amount-in-controversy for purposes of removal, defendants "need include only a plausible allegation that the amount in controversy exceeds the

jurisdictional threshold"—the notice need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014).

38.     "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." *Scott*, 865 F.3d at 196.

39.     Although the Complaint does not specifically identify the amount of damages Plaintiff and the putative class members seek in this action, the allegations make clear that it is plausible the amount they are putting at issue exceeds $5,000,000, exclusive of interest and costs.

40.     Plaintiff alleges he and the class suffered or are at an increased risk of suffering: lost money and time to prevent and repair identity theft, publication of information to the dark web, and lost value of his personal information because his personal information and health records were impacted in the MOVEit Incident. (Compl. ¶¶ 22, 23, 47.)

41.     Plaintiff alleges that sources indicate that a "single health record" is worth up to $500 on the dark web (*Id.* ¶ 43) and that the average cost to resolve medical identity theft is "more than $18,660." (*Id.* ¶ 51.) 49. Plaintiff further alleges that "any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended." (Compl. ¶ 49.)

42.     Thus, at a minimum, Plaintiffs' allegations that "more than 1000" people suffered these types of injuries places well over $5 million at issue. (1000 x ($500 + $18,600) = $19,100,000).

43.     In addition to damages for theft, lost time and value of information, Plaintiffs also seek injunctive relief requiring Defendant to "properly secure" its information by

implementing an extensive series of data security measures.  (Compl. ¶¶ 67, 91, 92, Prayer for Relief.)  When injunctive relief is sought, the amount-in-controversy is measured by the larger of "the injunction's worth to the plaintiff or its cost to the defendant."  *Johnson v. Think Comput. Corp.*, 2023 WL 3742990, at *5 (D. Md. May 31, 2023). Thus, the Court may also properly consider the amount it would cost Defendant to comply with any injunction related to its data-security practices ordered in this matter.

44.     The amount-in-controversy requirement is further satisfied for the same reason minimal diversity and numerosity exist in this case. Because Plaintiff and the putative class are subsumed within numerous putative classes already in the MDL, including *Moore* and *Farrar*, the Court may look to these actions to evaluate the amount placed in controversy. *See, e.g.*, *Sanders*, 2023 WL 3974966, at *6 (aggregating claims of members in MDL class and present case to reach CAFA amount-in-controversy); *see also Moore*, ECF 1 at ¶ 15 (MOVEit MDL case subsuming Plaintiff and the putative class in its class definition and alleging the amount in controversy is over $5 million); *Farrar*, ECF 1 at ¶ 15 (same).

45.     Accordingly, it is clear from the face of the Complaint that, when damages for theft, lost value, lost time, and injunctive relief are aggregated, and when considering the amount in controversy at issue in the MDL classes, CAFA's $5,000,000 amount-in-controversy threshold is exceeded here.

## III.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS.

Defendant also satisfies each of the procedural requirements for removal set forth in 28 U.S.C. § 1446.

### A.   Removal is Timely.

46.     Defendant is entitled to remove this action within thirty days of receipt of

service of the Complaint. *See* 28 U.S.C. § 1446(b)(1). The Complaint was filed on November 20, 2023, and Defendant was served on December 15, 2023. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint). Accordingly, this Notice of Removal is timely.

### B.    Removal is to the Proper Court.

47.    This Court is located in the "district and division" within which the state court action is pending in Garrett County, Maryland, and is therefore the proper court. *See* 28 U.S.C. §1446(a).

### C.    All Pleadings and Process Are Attached.

34.    In compliance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served on Defendant in the state court action are attached hereto as Exhibit B.

WHEREFORE, Defendant GRMC, Inc. respectfully requests that the action be removed to this Court and this Court assume full jurisdiction as if it had been originally filed here.

Dated: January 16, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Gilbert S. Keteltas*
Gilbert S. Keteltas
BAKER HOSTETLER LLP
1050 Connecticut Ave N.W., Suite 1100
Washington, DC 20036-5403
T: 202.861.1530
F: 202.861.1530
E: gketeltas@bakerlaw.com

*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing and all attached documents were filed electronically on January 16, 2024, and served on all counsel of record.

**<u>SERVICE LIST:</u>**

Arnold J. Abraham, Esq.
MD Bar No 1706200002
CyberLaw, LLC
220 N. Liberty Street
Baltimore MD 21201
Phone: ( 443) 906-3495

Eric Menhart, Esq.
MD Bar No 060613015
Lexero Law
512 C Street, NE
Washington, DC 20002
Phone: (855) 453-9376

*Attorneys for Plaintiff*

/s/ Gilbert S. Keteltas
*Attorney for Defendant*